661 So.2d 537 (1995)
Jeri M. BILLIOT, Plaintiff-Appellee,
v.
Thomas CLINE and Brookshire Grocery Co., In Solido, Defendant-Appellant.
No. 27,396-CA.
Court of Appeal of Louisiana, Second Circuit.
September 27, 1995.
*538 Mayer, Smith & Roberts by Ben Marshall, Jr., Shreveport, for appellant.
C. William Gerhardt & Associates by Walter W. Gerhardt, Shreveport, for appellee.
Before LINDSAY, BROWN and STEWART, JJ.
STEWART, Judge.
Brookshire Grocery Co. appeals a judgment awarding damages to plaintiff, Jeri Billiot, for injuries sustained in a slip-and-fall accident at one of its stores. For the reasons herein expressed, we affirm.

FACTS
On May 8, 1993, Jeri Billiot entered the Super One Grocery Store on Airline Drive in Bossier City to purchase ice cream and Pepsi. Ms. Billiot, 41, was casually dressed in shorts and tennis shoes with rubber soles. As she walked through the produce section, she slipped, fell, and injured her right knee, left hip, neck, and arm. Ms. Billiot fell in a puddle of water which soaked the bottom of her shorts. She testified that she saw a small piece of crushed ice melting on the floor beside her. After leaving Super One, Ms. Billiot was x-rayed at the emergency room of Bossier Medical Center and treated with pain medications. Two days later, Ms. Billiot began treatment with Dr. Acurio, whom she saw until July 6, 1993.
T. Chan, the produce stocker at Super One, testified that he was responsible for keeping the produce section clean on the day in question. Mr. Chan testified that he placed crushed or shaved ice on the vegetables in the produce section fifteen minutes before the accident. Mr. Chan's procedure for icing down the vegetables was to put a bucket of ice in a buggy and push the buggy down the aisle, placing ice on the appropriate vegetables. Mr. Chan testified that he swept the produce section twice every hour and inspected the floor for foreign objects. If Mr. Chan observed a spill, store policy provided that he immediately place a wet floor sign in the area, retrieve a mop, and clean up the spill. Mr. Chan testified that he swept the floor fifteen minutes before the fall, walked down the aisle in question two minutes before the accident, and found it to be dry and clean. Finally, Chan testified that the ice he saw melting on the floor after the fall did not appear to be the same kind of ice used on the vegetables.
After hearing the evidence, the trial court found that Brookshire Grocery Company was liable for Ms. Billiot's injuries and ordered it to pay $6,676.44. Brookshire Grocery appeals asserting that Ms. Billiot failed to meet her burden of proof under LSA-R.S. 9:2800.6, as amended in 1990.

LAW
In 1990, the Louisiana Legislature amended Revised Statute 9:2800.6, substantially changing the burden of proof in slip and fall cases. As a result of the amendment, the statute now provides, in pertinent part:
A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
B. In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, the claimant shall have the burden of proving, and in addition to all other elements of his cause of action, that:
(1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable;
(2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence; and
(3) The merchant failed to exercise reasonable care.
C. Definitions:
(1) "Constructive notice" means the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care.
Plaintiff's cause of action, which arose May 8, 1993, is governed by the current version of Revised Statute 9:2800.6. Plaintiff thus had the burden of proving she slipped and fell due to a condition on defendant's *539 premises which presented an unreasonable risk of harm, that the risk of harm was reasonably foreseeable, that defendant either created the condition or had actual or constructive notice of the condition prior to the occurrence, and that defendant failed to exercise reasonable care. Welch v. Winn-Dixie Louisiana, Inc., 94-2331 (La. 5/22/95), 655 So.2d 309.
After enactment of the above statute, floor debris does not create a presumption of negligence. However, a patron in a self-service store reasonably assumes that the aisles are clear for passage and focuses on the displayed merchandise, not the pathway. Perez v. Wal-Mart Stores, 608 So.2d 1006 (La.1992); Edwards v. K & B, Inc., 641 So.2d 1040 (La.App.2d Cir.1994)
After hearing Ms. Billiot and Mr. Chan testify that they saw ice melting in the puddle, the trial court found that the water on the floor was most likely caused by melted ice, which had fallen from the produce stand. The record is devoid of evidence that would indicate Ms. Billiot was at fault. The trial court held that a hazardous condition existed on the floor of the Super One Grocery and it was this hazardous condition that caused Ms. Billiot's injuries. The issues for our determination are: (1) whether Super One created or had actual or constructive notice of the condition which caused the damage, and (2) whether Super One exercised reasonable care.
Ms. Billiot testified that the melting ice which she saw on the floor after her fall was similar to the ice used to keep the vegetables in the produce section fresh. Mr. Chan testified that fifteen minutes before the accident he placed crushed ice on the vegetables, which were displayed on the aisle where Ms. Billiot fell. On cross examination, Mr. Chan described the ice placed on the vegetables as crushed or ground. However, on direct examination he stated that the ice he saw beside Ms. Billiot was not the type of ice used on the vegetables. The trial court obviously chose to believe Ms. Billiot's testimony that the ice on the floor was similar to the ice placed on the produce. The record supports this view and we cannot substitute the factfinder's reasonable evaluations of credibility or inferences of fact for our own, even if we would have weighed the evidence differently. Rosell v. ESCO, 549 So.2d 840 (La. 1988); Ferrel v. Fireman's Fund 94-1252 (La. 2/20/95), 650 So.2d 742; DeRouen v. Audirsch, 639 So.2d 476 (La.App.2d Cir. 1994); Stobart v. State, Through Dept. of Transp. and Dev., 617 So.2d 880 (La.1993).
Whether the protective measures employed by a merchant are reasonable is determined in light of the circumstances in each case: the risk involved, the merchant's type and volume of merchandise, the type of display, the floor space used for customer service, the volume of business, the time of day, the section of the premises, and other such considerations. Johnson v. Wal-Mart Stores, Inc., 616 So.2d 817 (La.App.2d Cir. 1993). Although Mr. Chan testified that it was Super One's policy for the produce section to be checked, swept and, if needed, mopped twice every sixty minutes, the record is devoid of evidence that Super One monitored or enforced this policy. Furthermore, if a merchant chooses to use ground or crushed ice in a heavily traveled area of the store, such as the produce section, the merchant must be particularly careful to prevent the risk of injury. Pushing a dry broom around the aisles and requiring one person to check the floor in thirty-minute intervals is unlikely to protect the public from the risk that ice might fall or be knocked to the floor and melt during the time between inspections. The trial court apparently discounted Mr. Chan's testimony concerning the floor being dry and clear two minutes before the fall. Even if we were to assume Mr. Chan did indeed walk down the aisle in question and did not notice the melting ice, this would support a holding that reasonable care was not exercised. Accordingly, we conclude that the trial judge was not manifestly erroneous in allowing Ms. Billiot to recover.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed against appellant.
AFFIRMED.